IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:12-CV-220-FL

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| WILLIAM I. COCHRAN, III; WRC, ) | |
| LLC; EKP, LLC; and EMLAN ) | |
| PROPERTIES, LLC, ) | |
| ) | |
| Defendants. ) | |

This matter comes before the court on plaintiff's motion filed December 30, 2013, for leave to identify six additional witnesses on whose behalf it may seek damages as "aggrieved persons," including: Teresa Foreman ("Foreman"), Alyssha Brown ("Brown"), and Mary Chestnut, Harriett Peterson, Quamesha Peterson, and Kenya Peterson ("the Chestnut family"). (DE 99). Over the opposition of defendants, plaintiff seeks leave to make the proposed supplementations to its Rule 26 disclosures and written discovery responses within seven days of the court's order. In its response (DE 101), defendants also protest plaintiff's reclassification of Justice Blow ("Blow") and Sterling Council ("Council") now as "aggrieved persons" and move to strike this designation. Plaintiff responded at the court's direction to that discrete argument January 16, 2014. (DE 106). Issues raised are ripe for ruling.

**BACKGROUND**

The statement of the case having been set forth in prior orders, here the court focuses on the case background as it relates to the disputed issues. Discovery has proceeded in fits and starts, as

variously described by the parties and shown on the record.  Because defendants did not disclose the identities of the Chestnut family, and because plaintiff says defendants earlier provided either inaccurate information or late information for Foreman and Brown, plaintiff asserts it could not know the information known to these individuals until after the close of discovery.

Under the court's most recent scheduling order, the deadline by which a party was required to file Rule 26 disclosures, including any supplementation thereto, – "identif[ying] the universe of all witnesses and exhibits that probably or even might be used at trial other than solely for impeachment" – was August 19, 2013, or forty (40) days before the end of the discovery period.  June 26, 2013, Order at p. 2.  The court's order continues, providing that

> [t]he rationale for the mandatory supplemental disclosures forty (40) days before the discovery deadline is to put opposing counsel in a realistic position to make strategic, tactical, and economic judgments about whether to take a particular deposition (or pursue follow-up "written" discovery) concerning a witness or exhibit disclosed by another party <u>before</u> the time allowed for discovery expires.

<u>Id.</u> (emphasis in original).

The scheduling order further adopted the parties' proposal for more depositions and an extension of discovery up to and until September 27, 2013.  On September 10, 2013, the court denied request by plaintiff for expansion of discovery on the showing then made.  Discovery in this case closed on September 27, 2013, by which date plaintiff had identified a total of nineteen (19) "aggrieved persons" on whose behalf it would seek damages at trial.

The instant motion, filed December 30, 2013, and disclosures served then supplementing earlier ones made concerning Blow and Council (designating them as "aggrieved persons"), would seek to add a total of eight additional "aggrieved persons."  Defendants protest these disclosures as untimely, unjustified, and harmful to their interests.  Plaintiff offers justification for delay, and

2

Case 4:12-cv-00220-FL   Document 110   Filed 01/30/14   Page 2 of 16

suggests a period of limited, additional discovery, and a slight extension of the dispositive motions deadline, in mitigation.

## COURT'S DISCUSSION

A.  Timeliness of Plaintiff's Disclosure

Plaintiff urges that the court should allow its disclosures of these eight witnesses after the deadline in the court's scheduling order, citing authority applying Rule 16(b)(4). Pursuant to the district's Local Civil Rules and the Federal Rules of Civil Procedure, the deadlines set forth in the court's case management order(s) may be modified only for good cause shown. Fed. R. Civ. P. 16(b)(4); Local Civ. R. 6.1, 26.1(b). The party moving to modify discovery deadlines bears the burden of showing good cause. See Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008) (recognizing the good cause standard to amend deadlines is in place because Rule 16 is a required tool for district courts to manage heavy caseloads).

Plaintiff relies on Stonecrest Partners, LLC v. Bank of Hampton Roads, 770 F. Supp. 2d 778 (E.D.N.C. 2011), in support of its late disclosures. There, in considering a motion to amend pleadings, the court held that "[a] schedule may be modified only for good cause and with the judge's consent," Fed. R. Civ. P. 16(b)(4), and this "good cause standard must be satisfied to justify [an untimely motion for] leave to amend the pleadings." Id. at 785 (quoting Nourison, 535 F.3d 295, 298-99).

"Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party." Id. at 784 (quoting Montgomery v. Anne Arundel Cnty., Md., 182 F. App'x 156, 162 (4th Cir. 2006)). In Stonecrest, the court looked to whether the "evidence supporting the proposed

3

amendment would not have been discovered in the exercise of reasonable diligence until after the amendment deadline had passed." Id. (quoting Godwin, 247 F.R.D. at 506). Appropriately, the burden to "justify a departure from the rules set forth in the court's scheduling order" is on the moving party. Id. (quoting Godwin, 247 F.R.D. at 506).

This case presents somewhat different circumstances from Stonecrest, however, in its required reflection also on Rule 26, given the circumstances at issue here. "Rule 26 promotes fairness both in the discovery process and at trial. For Rule 26 to play its proper part in this salutary scheme, discovery must not be allowed to degenerate into a game of cat and mouse." Thibeault v. Square D Co., 960 F.2d 239, 244 (1st Cir. 1992). Rule 26(a)(1)(A), in relevant part, instructs that "a party must . . . provide to the other parties: (i) the name and, if known, the address and telephone number of each individual like to have discoverable information." Further, Rule 26(e)(1) provides that

> [a] party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . or (B) as ordered by the court.

As noted above, the court's scheduling order provided that supplemental disclosures should be made by August 19, 2013. The advisory committee notes to that rule also explain that "[s]upplementations need not be made as each new item of information is learned but should be made at appropriate intervals." Fed. R. Civ. P. 26(e) advisory committee note (1993). These supplementations should be made "with special promptness as the trial date approaches." Id. Read in conjunction with the directive of Rule 1 that the rules should be "construed and administered to secure the just, speedy, and inexpensive determination of every action," plaintiffs' justification for

4

the delay is unavailing.

Plaintiff gives differing reasons for timing in identifying the eight witnesses now identified as "aggrieved persons," lumping them into two categories. The first category of these witnesses addressed below are those of whom plaintiff had knowledge before expiration of the deadline for supplementation and in advance of the close of discovery, namely, Foreman, Brown, Blow, and Council. The second category is comprised of the Chestnut family, about whom plaintiff did not know prior to the close of discovery.

    1.    Foreman, Brown, Blow, and Council

As to Foreman, it is undisputed that defendants identified Foreman as a current tenant and potential witness December 7, 2012. On January 25, 2013, plaintiff was reminded of Foreman when defendants amended their disclosures to include a telephone number for her. Plaintiff acknowledges that on June 19, 2013, it was again reminded of Foreman when defendants again supplemented their disclosures concerning Foreman, providing a new telephone number, but no other information. Plaintiff indicates at some unspecified point during the course of discovery it tried to contact Foreman by telephone, and in person, but was not successful in locating her.

Plaintiff complains now that written discovery produced by defendants last spring was not specific enough to identify Foreman. The time to raise such issue, however, has long since passed. Plaintiff does not point the court to any complaint it raised related to the quality of defendants' disclosures or its written discovery responses concerning Foreman, when the disclosures and responses were made to it. As the court instructed in its case management order "[a]ny motion to compel discovery shall be filed or served **within 30 days** of the act or omission in discovery complained of, after good faith effort between the parties to resolve the matter." December 26,

5

2013, Order II.E. (emphasis in original).

While offering no support for the proposition, plaintiff suggests responsibility on the part of defendants to affirmatively monitor the whereabouts of persons disclosed as knowledgeable about disputed matters. As defendants note, difficulties monitoring potential witnesses' whereabouts accrue to both sides in the litigation.

Brown's name was among the information disclosed as a part of final disclosures by defendants made on or immediately before the August 19, 2013, deadline. Defendants also disclosed her employer with the employer's name, address, and telephone number also provided by defendants. Plaintiff notes that Brown's was one of many parties disclosed by defendants on or immediately before the August 19, 2013, deadline, and asserts that the volume of these disclosures was overwhelming.

Plaintiff, however, makes little mention of its work activities in the case last summer in the context of its arguments until it refers to defendants' final disclosures. Plaintiff does make reference to a busy period for it between the deadline for disclosures on August 19, 2013, and the September 27, 2013, discovery deadline, during which it conducted nineteen (19) depositions and responded to lengthy written discovery. It appears plaintiff scheduled nearly all of its depositions during that brief period between the two deadlines. As defendants note, there appears a failure to effectively manage the time allotted for discovery.

By plaintiff's own account, after completing the deposition of defendant's expert on extended schedule November 14, 2013, plaintiff turned back to locating Brown, which it promptly did November 21, 2013. Eighteen (18) days later, upon return to the district on December 9, 2013, plaintiff interviewed her. On the same date of that interview, it readily located Foreman and

6

interviewed her. Plaintiff did not disclose to defendants the perceived import of the information obtained from either, until December 30, 2013.

The approach taken to discovery and deposition scheduling appears offered in part as the explanation for plaintiff's four-month delay in disclosing information in supplementation. However, failure timely to raise discrete issue(s) bearing on location of disclosed witnesses and a heavy deposition schedule, without more, do not form the basis of good cause under these circumstances.

The speed with which plaintiff located Foreman last November belies prior difficulty in so doing, too. While plaintiff makes reference to a busy period for it between August 19, 2013, and September 27, 2013, it makes no mention of trying to contact Brown within the discovery period, either.

Based on the foregoing, the court concludes that plaintiff's disclosure of Foreman and Brown is not timely. See Ale House Mgmt., Inc. v. Raleigh Ale House, Inc., No, 5:02-CV-709-BO, 2006 WL 6663793, at *11 (E.D.N.C. Mar. 21, 2006) (noting that plaintiff's delay in identifying a witness "until after the close of discovery connotes, if anything, a lack of diligence on Plaintiff's part in conducting its factual inquiries"); see also Boyer v. Home Depot U.S.A., Inc., No. 08-13382, 2010 WL 1254847 at *4 (E.D. Mich. Mar. 26, 2010) ("The Defendant did not undertake a diligent and reasonable inquiry in order to timely supplement either its initial disclosures under Rule 26(a) or it discovery responses, as required by Rule 26(e)."); cf. Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1027 (9th Cir. 2006) (Affirming the district courts denial of plaintiff's motion to reopen discovery, noting that "[p]laintiff must accept the consequence of his choice not to pursue discovery of Ms. Smith's testimony before the discovery cutoff").

As to Blow and Council, each of these individuals originally were listed as fact witnesses.

Plaintiff did not disclose it would be seeking compensatory damages for them, in addition to their mother, Terisha Lynn, and the other designated "aggrieved persons." Ms. Lynn mentioned her sons during her deposition July 24, 2013, stating that defendant Cochran refused to deal with an issue with a broken refrigerator, and referring to her with a racial slur in front of Blow and Council. On August 19, 2013, plaintiff disclosed these individuals as potential witnesses. The disclosures indicated Blow and Council may have information regarding defendants' discriminatory practices based on their experiences at defendants' rental property.

Ms. Lynn did not know at time of her deposition where her sons resided. Plaintiff hired a private investigator to help locate Blow and Council on August 23, 2013, to no avail. Plaintiff's own efforts to locate them also met with no success.

At or about the time the parties were engaged in depositions, on October 31, 2013, the grandmother of Blow and Council gave their telephone numbers to plaintiff. Calls were placed to each that day, and information was provided by Blow and Council to plaintiff. Plaintiff asserts that it "needed to speak with them a second time to get additional information and determine whether to identify them as aggrieved." Pl.'s Suppl. Mem. (DE 106) 3. The next week it attempted to speak with Blow and Council, without success. About two weeks later, on November 13, 2013, plaintiff asked the grandmother for alternate telephone numbers, but she was unable to satisfy this request.

Somehow, plaintiff was able to contact Blow and Council again, and to engage each in a second interview, with Council's interview occurring on November 20, 2013, during that period after completing the deposition of defendant's expert on extended schedule, when plaintiff turned back also to locating Brown, which it promptly did the following day, on November 21, 2013. Eighteen (18) days later, upon return to the district on December 9, 2013, when plaintiff interviewed

Brown, and readily located Foreman and interviewed her, plaintiff conducted its second interview of Blow.

At no point prior to December 30, 2013, did plaintiff suggest it would be seeking damages also for Blow and Council.

Plaintiff argues that defendants had enough information during discovery to conclude that Blow and Council could be considered aggrieved within the meaning of the Fair Housing Act. It states that as soon as it had obtained enough information to determine it would seek damages, it supplemented its disclosures.

It appears that plaintiff did diligently attempt to contact Blow and Council after learning of them from Ms. Lynn. Plaintiff does not explain, however, why it could not have earlier identified Blow and Council as aggrieved persons. Rather, it conclusorily asserts that it needed to speak with them twice before having the necessary information to determine they should be identified as aggrieved.

In plaintiff's second supplemental answers to defendant Cochran's first set of interrogatories, which it served on December 30, 2013, plaintiffs inform defendants that Blow and Council were present when defendant Cochran purportedly referred to Ms. Lynn with a racial slur while refusing to perform certain maintenance on the residence that Blow and Council lived in with Ms. Lynn. This supplementation does not appear to disclose any information plaintiff was not informed of by Ms. Lynn. It is unclear why the conversations plaintiff had with Blow and Council were a necessary prerequisite to their being named aggrieved persons as plaintiff asserts. Thus, plaintiff has not shown that its identification of Blow and Council as "aggrieved persons" is a timely supplementation where it has not shown why these men could not earlier have been so identified.

Even granting, for the sake of argument, that such conversations were necessary for plaintiff's identification of Blow and Council as aggrieved persons, the court notes that plaintiff was aware of Blow and Council as of July 24, 2013, long before the close of discovery. While plaintiff undoubtedly encountered difficulty in locating these men, at no time during the discovery period to plaintiff move for an extension of discovery on the ground that it needed more time to locate potential aggrieved persons.[1] Instead, without raising its difficulty in finding Blow and Council, plaintiff waited until shortly before the dispositive motions deadline to identify these men as aggrieved persons to defendants. See Gallagher v. Southern Source Packaging, LLC, 568 F. Supp. 2d 624, 630-31 (E.D.N.C. 2008) (noting that Rule 26 cannot be used to "sandbag" a party opponent with information that should have been disclosed at an earlier stage in litigation and does not allow for "gamesmanship and delay").

2. The Chestnut Family

The day after plaintiff interviewed Brown and Foreman, on December 10, 2013, Mary Chestnut called plaintiff. Chestnut had lived in a subject unit before Foreman moved into it. Plaintiff urges that Chestnut's identity previously had not been disclosed by any party. On the date of that interview, the rest of the individuals identified as members of the Chestnut family were interviewed, too. None of them previously were known, either.

It would appear likely that after Foreman was interviewed December 9, 2013, she contacted Mary Chestnut, given their shared occupancy, and provided Chestnut with contact information for plaintiff's attorney, who Chestnut called December 10, 2013. Reasonably, had plaintiff, who was

---

[1] Plaintiff did file a motion requesting an extension of discovery (DE 76) which was denied by the court by order entered September 10, 2013. Plaintiff's request for additional time to conduct discovery in that motion, however, was grounded in its assertion that it needed more time to take depositions of fact witnesses identified by defendants in supplemental disclosures.

10

alerted to Foreman as a then current tenant and potential witness nearly a year earlier, on December 7, 2012, moved earlier to locate and interview Foreman, Chestnut, too, would earlier have been located. Thus, the delay in locating the Chestnut family appears also to be a result of plaintiff's lack of diligence in pursuing potential witnesses. Accordingly, the court finds that the disclosure of the Chestnut family also is untimely. See Ale House Mgmt., Inc., 2006 WL 6663793, at *11.

While it is troubling on the face of it that Chestnut was not identified by defendants, where plaintiff makes mention of receiving approximately 20,000 pages of documents last June from defendants in the course of their operation of the rental properties at issue, in which it discovered no mention of the Chestnut family, defendants counter that it was plaintiff who produced documents August 27, 2013, identifying Mary Chestnut and another member of the Chestnut family, Harriett Peterson. The production was made through a third-party subpoena. Plaintiff fails to explain why it did not contact these women directly, before receiving a telephone call from one on December 10, 2013.

Based on the foregoing, plaintiff failed timely to supplement its initial disclosures as required both by Rule 26(e) and this court's scheduling order. The court turns next to consider whether, in light of plaintiff's untimely disclosures, plaintiff should nonetheless be permitted to identify these eight individuals as witnesses and/or aggrieved persons in support of its case.

B.  Propriety of Sanctions for Untimely Disclosure

Rule 37(c)(1) directs that when a party "fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The Fourth Circuit has stated that a district court has "broad discretion to determine

whether a nondisclosure of evidence is substantially justified or harmless," but should consider the following five factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

S. States Rack And Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003), 318 F.3d at 597.[2] The court considers, first, whether plaintiff's untimely disclosure of Foreman, Brown, and the Chestnut family as witnesses and aggrieved persons is substantially justified or harmless. The the court considers below whether the untimely designation of Blow and Council as aggrieved persons is substantially justified or harmless.

   1.   Foreman, Brown, and the Chestnut Family

The court considers, first, plaintiff's explanation for its failure to timely disclose Foreman, Brown, and the Chestnut family. Southern States, 318 F.3d at 597. Plaintiff contends that it could not have made these disclosures earlier, for the same reasons it contends its disclosures were timely

---

[2] The court notes also that Rule 16(f), in relevant part, provides for a broad range of sanctions when a party "fails to obey a scheduling or other pretrial order," noting that the court may issue "any just order." There is some ambiguity in the caselaw as to whether courts should apply Rule 16(f) or 37(c) where, as here, a scheduling order governs the timing of the disclosures at issue. Compare Gallagher, 568 F. Supp. 2d at 631-32 (noting that defendant's disclosure was not seasonable under the court's scheduling order and then applying Rule 37(c) to determine if sanctions were appropriate), with Akeva L.L.C. v. Mizuno Corp., 212 F.R.D. 306, 309 (M.D.N.C. 2002) ("When a dispute arises concerning violation of expert disclosure obligations pursuant to a court approved discovery plan, the Court should first look to Rule 16(f) for determining both compliance and sanctions, as opposed to Rule 37(c)."), and Mayor & City Council of Baltimore v. Unisys Corp., No. JKB-12-CV-614, 2013 WL 4784118, at *4 n.2 (D. Md. Sept. 5, 2013) (noting that both Rule 16(f) and 37(c) are applicable when a party fails to timely disclosure information under Rule 26 and a scheduling order). Moreover, courts within the Fourth Circuit that apply Rule 16(f) in this situation disagree as to what test ought to be applied when determining the proper sanction under that Rule 16(f). Compare Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc., No. 1:03-CV-537, 2005 WL 6043267 (M.D.N.C. July 7, 2005) (stating that relevant considerations include the party's explanation for the failure to obey the order, the importance of the testimony, the prejudice to the opposing party by allowing the disclosures, the availability of lesser sanctions, the interest in expeditious resolution of litigation, the court's need to manage its docket, and public policy favoring disposition of cases on the merits), with Luma Corp. v. Stryker Corp., 226 F.R.D. 536, 544 (S.D.W. Va. 2005) (applying the five Southern States factors to determine what sanctions to apply under Rule 16(f)). In this case, however, under any of these above analyses, the court's conclusion would be the same. The court, therefore, need not definitely determine which rule(s) and test(s) is/are appropriately applied at this time.

12

supplementations. The court finds plaintiff's explanation for its failure to disclose to be insufficient for the same reasons the court rejected plaintiff's assertion that its supplementation was timely.

The court's inquiry with respect to importance of the testimony of these women continues here. The court notes that none of these witnesses are expected to present unique testimony. It is suggested that the government will offer through these individuals evidence in direct relation to central issues of this case, but that evidence would come in the context of nineteen (19) "aggrieved persons" already identified and expected to testify. It would appear plaintiff's lack of interest until now in the cases of Teresa Foreman, Alyssha Brown, Mary Chestnut, Harriett Peterson, Quamesha Peterson, and Kenya Peterson reflects an earlier determination of where its litigation resources should be placed, around which defendants have shaped their position.

Surprise to defendants, the ability of defendants to cure the surprise, and disruption of trial must also be considered. Defendants would undoubtedly wish to depose these witnesses. While trial in this matter is not set, the discovery deadline has elapsed, and the motions filing deadline expired January 15, 2014. Defendants filed their motion for summary judgment on January 14, 2014. Where orderly administration of the court's case load is at issue, these factors weigh against plaintiff. Extending the dispositive motions deadline – after defendants have already filed a motion for summary judgment – and allowing for further depositions as necessary to cure surprise to defendants would harm the interest in expeditious resolution of the litigation and this court's docket management. See Gallagher, 568 F. Supp. 2d at 632 (noting that reopening discovery to accommodate an untimely expert report would "trample the Scheduling Order and disrupt proceedings in this case"). This harm is all the more apparent in light of the compelling need to impress respect for the court's directives including that discovery be conducted in orderly fashion

13

and all disclosures timely made. This case has involved more than the usual amount of pre-trial maintenance time by the court already.

In light of the aforementioned factors, the court finds that allowing plaintiff to untimely identify these six witnesses would be improper. The court therefore denies plaintiff's motion to do so.

2.  Blow and Council

The court turns to consider whether the untimely designation of Blow and Council as aggrieved persons is substantially justified or harmless. Plaintiff contends it could not have timely designated Blow and Council as aggrieved persons. The court rejects this explanation for the same reasons that it found such designation was not timely.

This designation is, however, important to plaintiff where it determines whether or not plaintiff may seek damages on their behalf. Cf. Silicon Knights, Inc. v. Epic Games, Inc., 5:07-CV-275-D, 2012 WL 1596722 at *8 (E.D.N.C. May 7, 2012) (noting that proving damages is important to a plaintiffs case); Salami v. N. Carolina Agr. & Technical State Univ., 394 F. Supp. 2d 696, 710 (M.D.N.C. 2005) (testimony that could impact plaintiff's damages found to be important). Moreover, any surprise to defendants is minimal. While these men had not been designated as aggrieved person on who's behalf the government could seek damages, the basic substance of their testimony was known since the time of Ms. Lynn's deposition where she testified as to harms allegedly suffered by her sons.

Finally, the court considers the ability of defendants to cure any surprise and the extent to which allowing this untimely designation would disrupt trial. As noted above, trial is not set, but the dispositive motions deadline has passed, and defendants' have filed a motion for summary

judgment on all claims which is ripening. Thus, to the extent that allowing designation of Blow and Council as aggrieved witnesses would affect the outcome of this dispositive motion, the only way to cure this surprise would be to allow defendants to depose Blow and Council, extend the dispositive motions deadline, and allow defendants the opportunity to supplement their motion with testimony and argument address also to these two. Such a "cure" would result in expense to defendants and necessarily protract the trial date.

As noted above, there is no indication that Blow and Council's expected testimony as aggrieved persons will be differ materially from their expected testimony as fact witnesses. Furthermore, the harms purportedly suffered by Blow and Council arise out of the same transactions and occurrences as those purportedly suffered by Ms. Lynn. Defendants' summary judgment motion is premised upon the assertion that plaintiff has not proffered evidence that defendant William Cochran discriminated against a tenant because of race. Thus, any impact of this untimely designation on the outcome of dispositive motions appears negligible. Barring request by defendants for such an extension and deposition opportunity with respect to advancement of their motion, it would seem another cure appropriately may be considered, with the eyes on trial. The court can arrange to cure any surprise by this designation prejudicial to defendants' trial position by allowing defendants, if requested, to take the depositions of Blow and Council before trial, should issues remain after resolution of defendants' motion for summary judgment.

Thus, after consideration of the Southern States factors, the untimely designation of Blow and Council appears harmless, and the court will deny without prejudice defendants' request to strike this designation. Nevertheless, should plaintiff's response reveal that the new designation of Blow and Council has the potential to materially impact that outcome of dispositive motions, they

may seek extension and to undertake depositions in order to supplement their summary judgment motion, within ten (10) days. Alternatively, defendants may decide those steps unnecessary, but wish to depose Blow and Council before trial. Upon the court's decision on summary judgment, should issues remain, defendants are allotted ten (10) days within which to make any deposition request.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for leave to identify additional witnesses and aggrieved persons is DENIED. Defendants motion to strike the designation of Blow and Council as aggrieved persons is DENIED. Avenues for defendants to request relief in mitigation of any prejudice concerning the late designation of Blow and Council as "aggrieved parties" is set forth above.

SO ORDERED, this the 30th day of January, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge