IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:12-CV-220-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| WILLIAM I. COCHRAN, III; WRC, LLC; EKP, LLC; EMLAN PROPERTIES, LLC; and RICHARD A. COCHRAN, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on defendants' motion in limine to exclude certain arguments and contentions relating to defendants' asserted joint and several liability and liability of Richard Cochran (DE 177). Plaintiff responded to the motion, and in this posture the issues raised are ripe for ruling. For the following reasons, the court grants the motion.

## BACKGROUND

In September 2012, plaintiff filed complaint asserting a claim under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619, against individual defendant William I. Cochran, III ("William Cochran") and the various entities for which he has managed residential rental properties, namely defendants WRC, LLC ("WRC"); EKP, LLC ("EKP"); and EmLan Properties, LLC ("EmLan"). Plaintiff seeks damages on behalf of certain tenants and associated persons asserted to be "aggrieved persons" allegedly injured by defendants' discriminatory conduct. On September 19, 2013, plaintiff

filed, with leave of court, an amended complaint, adding Richard A. Cochran ("Richard Cochran"), William Cochran's brother, as a defendant.

As pertinent here, the amended complaint includes the following allegations regarding the parties and their conduct. "In his establishment of policies and procedures and his management activities relating to the rental properties, William Cochran acted as the agent of Defendant [WRC], [EmLan], [EKP], and [Richard Cochran]." (Am. Compl. ¶ 5). "WRC rented its properties to tenants through the actions of its agent, William Cochran." (Id. ¶6). "EKP rented its properties to tenants through the actions of its agent, William Cochran." (Id. ¶7). "Emlan rented its properties to tenants through the actions of its agent, William Cochran." (Id. ¶8). "Richard Cochran and William Cochran rented their property(-ies) to tenants through the actions of William Cochran." (Id. ¶9).

"Since at least 2003, William Cochran has maintained unlawful discriminatory policies and engaged in unlawful discriminatory practices at the residential properties owned by the Defendants, because of race or color." (Id. ¶11). "The Defendants are liable for the discriminatory conduct of their agent and manager, William Cochran, described above." (Id. ¶13). Plaintiff seeks relief including an award of "monetary damages to each person injured by the Defendants' discriminatory conduct." (Id. p. 6).

In its brief in opposition to summary judgment, plaintiff summarized its theory of liability for defendants in this case. In particular, it stated, "[William] Cochran, acting as an agent of the LLCs, primarily handles the daily management of residential rental properties that are or were owned by Defendants." (DE 121 at 2). "Defendants [WRC], [EKP], [EmLan] and [Richard Cochran] are each vicariously liable for the actions of William Cochran as manager of the properties each owns." Id. It confirmed, further, "[i]ndeed, Defendants do not raise any arguments to the

2

contrary in their motion, nor could they – there is no factual dispute that William Cochran had primary responsibility for all aspects of the day-to-day rental and maintenance of the Defendants' properties." (Id. at 3).

At pretrial conference, held December 23, 2014, defendants voiced objection to inclusion of plaintiff's contentions in proposed joint pre-trial order that William Cochran and Richard Cochran commingled funds between and amongst the LLC defendants, their personal funds, and additional businesses, Cochran Builders and Build Tech, Inc. (Pretrial Conf. Tr. at 71). Defendants objected to the inclusion of the contention that all of the LLC defendants could be held jointly and severally liable, premised on alter ego or piercing the corporate veil, for all of the actions taken by William Cochran, where that theory of liability was not pleaded. (Id. at 66-68, 70-71). Defendants also objected to the contention that Richard Cochran could be held liable for acts of William Cochran directed at properties other than the one he owns. (Id. at 68-70).

The court directed defendants to file an appropriate motion by January 5, 2015, and plaintiff to file a response in opposition by January 9, 2015, a matter of days before the scheduled commencement of trial on January 13, 2015, now underway. Defendants filed their motion on January 5, supported by memorandum filed January 6, which motion specifically seeks exclusion from trial "any argument, allegation, jury instruction, or factual contention" that –

> (1) William I. Cochran, III's co-defendants (EKP, LLC; EmLan Properties, LLC; WRC, LLC; and Richard A. Cochran) may be held jointly and severally liable for William's purportedly wrongful conduct, and/or
>
> (2) that Richard A. Cochran may be held vicariously liable for actions that occurred at or relate to properties other than the one property in which Richard holds a direct ownership interest.

3

(DE 177). In opposition, the government contends it has properly pleaded and will show that "all Defendants are jointly and severally liable for [William Cochran's] discriminatory acts as a matter of law." (DE 186 at 1). In addition, it contends that all defendants "are jointly and severally liable for the discriminatory acts attributable to [a] single integrated enterprise, because Defendants were on notice of their potential liability including the facts alleging a failure to follow corporate formalities sufficient to pierce the corporate veil." Id. at 2.

At the start of trial, the court entered an amended joint pre-trial order including the following stipulation:

> At all times relevant to this matter, Defendant William I. Cochran, III (hereinafter "Defendant William Cochran") acted as the manager and primary decision-maker for the properties owned by EKP, LLC, WRC, LLC, and EmLan Properties, LLC. Defendant William Cochran's decision-making authority included the selection of tenants, when and what repairs would be made to the individual properties, and the eviction of tenants. His duties included collecting rent, receiving requests for maintenance, performing, or hiring contractors to perform, repairs or maintenance, and determining whether to credit tenants for repairs they made themselves.

(Pretrial Order at 3). The pretrial order includes the following factual contentions by plaintiff:

> e. Defendant William Cochran, as manager of the properties owned by Defendants EKP, LLC, WRC, LLC, and EmLan Properties, LLC, comingled funds between and amongst the LLC Defendants and his personal funds, including his personal business, Cochran Builders.
>
> f. EKP, LLC, WRC, LLC, and EmLan Properties, LLC were insufficiently capitalized.
>
> g. Defendant Richard Cochran comingled his personal funds and the funds of his company Build Tech, Inc. with the funds of Defendant WRC, LLC.
>
> h. Defendant William I. Cochran, III operated WRC, LLC, EKP, LLC, and EmLan Properties, LLC as a single, integrated enterprise.

(Id. at 7).

In addition, the pretrial order includes the following issues asserted by plaintiff:

a. Defendants EKP, LLC WRC, LLC, EmLan Properties, LLC and Richard A. Cochran are vicariously liable for the actions of Defendant William Cochran as their agent. *See Meyer v. Holly*, 537 U.S. 280, 285 (2003).

\*   \*   \*

g. Defendants Richard Cochran and William Cochran have used WRC LLC, EKP, LLC, and EmLan Properties, LLC as alter egos.

h. Defendants are jointly and severally liable for compensatory damages to persons designated as aggrieved in this matter.

i. WRC, LLC, EKP, LLC, and EmLan LLC are a single, integrated enterprise.

(Id. at 8-9). Finally, jury instructions proposed by plaintiff reflect a joint and several theory of liability, on the basis that the corporate defendants acted as a single integrated enterprise, including through intermingled funds. (DE 182 at 21-22).

## DISCUSSION

The Federal Rules of Civil Procedure require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). A properly pleaded complaint provides to an opponent "illumination as to the substantive theory under which [plaintiff] [i]s proceeding, which is the function of pleadings under the Federal Rules." Atl. Purchasers, Inc. v. Aircraft Sales, Inc., 705 F.2d 712, 717 (4th Cir. 1983).

In addition, Federal Rule of Evidence 402 provides that "[r]elevant evidence is admissible," and "[i]rrelevant evidence is not admissible." Evidence is relevant if "it has any tendency to make

5

a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). Thus, "[r]elevancy . . . exists only as a relationship between an item of evidence and a matter properly provable in the case." Id. Advisory Committee Note.

Accordingly, a case may not proceed to trial on "an unpleaded theory of recovery" without "express or implied consent of the parties." Pinkley, Inc. v. City of Frederick, MD., 191 F.3d 394, 401 (4th Cir. 1999); McLeod v. Stevens, 617 F.2d 1038, 1040 (4th Cir. 1980). Further, "a court will not imply consent to try a claim merely because evidence relevant to a properly pleaded issue incidentally tends to establish an unpleaded claim." Quillen v. Int'l Playtex, Inc., 789 F.2d 1041, 1044 (4th Cir. 1986). Rather, a party must amend the complaint, or the parties must "constructively amend the complaint" by, for example, "agreeing . . . to litigate fully an issue not raised in the original pleadings," or by addressing a theory of liability "in their summary judgment briefs." Interstate Petroleum Corp. v. Morgan, 249 F.3d 215, 227 (4th Cir. 2001) (quotations omitted); see also Whitaker v. T.J. Snow Co., 151 F.3d 661, 663 (7th Cir.1998) (explaining that "[b]ecause both parties squarely addressed the strict liability theory in their summary judgment briefs, the complaint was constructively amended to include that claim") (emphasis added).

The Fourth Circuit and other circuit courts have in various circumstances upheld decisions to limit the scope of issues at trial to those theories of relief or claims properly pleaded. For example, in Elmore v. Corcoran, 913 F.2d 170, 173 (4th Cir. 1990), the court reversed a district court finding of liability following bench trial on an unpleaded "due process theory" of relief. In Atlantic Purchasers, the court affirmed a limitation imposed at trial where a plaintiff sought relief, not previously pleaded, on the basis of "an unusual remedy that goes beyond 'the general damages the

6

law normally awards to compensate plaintiff for the injury he seeks to have redressed.'" 705 F.2d at 717 (quoting 5 Fed. Prac. & Proc: Civil § 1310)). In Quillen, the court affirmed the district court's decision to limit trial on action for negligent manufacture and negligent failure to warn, excluding an unpleaded claim for "negligent testing," where it would have required defendant "to defend against a claim for which it was unprepared." 789 F.2d at 1044; see also Crigger v. Fahnestock & Co., 443 F.3d 230, 237 (2d Cir. 2006) (holding that where "the district court refused plaintiffs' request to charge the jury on conspiracy to defraud or on aiding and abetting the fraud, [t]he aiding and abetting charge was properly omitted because that legal theory was not pleaded in the complaint") (emphasis added); Marmott v. Maryland Lumber Co., 807 F.2d 1180, 1185 (4th Cir. 1986) (recognizing that plaintiff properly was restricted from asserting claim based upon "concerted action" where not pleaded).

Joint and several liability, based upon alter ego or piercing the corporate veil, is a distinct theory of relief separate from the agency theory that plaintiff alleged in the complaint. As noted in its brief on summary judgment, and reiterated again in the pretrial order, defendants' liability is based upon the conduct of William Cochran, acting as their agent, under a theory of vicarious liability, which is a straightforward, well-established, avenue of relief in a Fair Housing Act case. The Supreme Court, in Meyer v. Holley, noted that "it is well established that the Act provides for vicarious liability," and that "traditional vicarious liability rules ordinarily make principals or employers vicariously liable for the acts of their agents or employees in the scope of their authority or employment." 537 U.S. 280, 285 (2003). The allegations in the amended complaint, and agency contentions in the pretrial order, apply directly to this vicarious liability theory, where they allege that William Cochran acted as the agent of the LLC defendants and Richard Cochran, and that each

7

of the LLC defendants rented its properties to tenants through the actions of its agent, William Cochran. (Am. Compl. ¶¶5-8; Pretrial Order at 7 (citing Meyer, 537 U.S. at 285)).

A joint and several liability theory of relief, by contrast, based upon alter ego or piercing the corporate veil, is an unusual, exceptional, and specialized theory of relief. Notably, the Supreme Court in Meyer expressly declined to consider whether, in a Fair Housing Act case, "the corporation's liability may be imputed to the corporation's owner in an appropriate case through a 'piercing of the corporate veil.'" Meyer 537 U.S. at 292. Further, the court rejected expanding its holding from imposing liability "in accordance with traditional agency principles, . . . normally impos[ing] vicarious liability upon the corporation," id. at 282, to "special circumstances" or "an unusual modification of those rules," which might lead to liability for the "owner or officer" of a corporation. Id. at 286.

"[A] corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances, commonly referred to as 'piercing the corporate veil.'" Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 544 (4th Cir. 2013) (emphasis added). "Piercing the corporate veil is an equitable remedy, and the burden rests with the party asserting such claim." Kinney Shoe Corp. v. Polan, 939 F.2d 209, 211 (4th Cir. 1991) (emphasis added); see Vitol, 708 F.3d at 544 (addressing merits of "alter ego claim as pled" in complaint). "This power to pierce the corporate veil . . . is to be exercised reluctantly and cautiously." DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co., 540 F.2d 681, 683 (4th Cir. 1976). "[I]n extraordinary cases, such as the corporate form being used for wrongful purposes, courts will pierce the corporate veil and disregard the corporate entity." Vitol, 708 F.3d at 544.

8

"Several factors . . . guide the determination of whether one entity constitutes the alter ego of another." Id. "These factors include gross undercapitalization, insolvency, siphoning of funds, failure to observe corporate formalities and maintain proper corporate records, non-functioning of officers, control by a dominant stockholder, and injustice or fundamental unfairness." Id. (quotations omitted). "Other factors properly considered by the district court in this case include intermingling of funds; overlap in ownership, officers, directors, and other personnel; common office space; the degrees of discretion shown by the allegedly dominated corporation; and whether the dealings of the entities are at arm's length." Id.

Plaintiff did not in this case plead such joint and several liability, based upon a theory of alter ego or piercing the corporate veil, nor did plaintiff plead facts upon which to assert such a claim of relief. Plaintiff did not allege, as it now does, that William Cochran and Richard Cochran intermingled funds, that the LLC defendants were insufficiently capitalized, nor that the defendants operated as a single, integrated enterprise. Plaintiff did not assert that William Cochran and Richard Cochran used the LLC defendants as alter egos, nor did it assert that defendants are jointly and severally liable for compensatory damages, as it now does.

In sum, joint and several liability, based upon alter ego or piercing the corporate veil, must be pleaded to be actionable at trial. Where plaintiff did not plead such a theory of relief, plaintiff's present assertions of liability on this basis must be excluded from trial. Such excluded assertions include any argument, allegation, jury instruction, or factual contention, that William Cochran and Richard Cochran used the LLC defendants as alter egos, such that all defendants may be held jointly and severally liable for William Cochran's purportedly wrongful conduct, even where his conduct did not involve a property owned by all defendants. Such excluded assertions also include any

9

argument, allegation, jury instruction, or factual contention that Richard Cochran may be held liable for actions by William Cochran that occurred at or related to properties other than the one property in which Richard Cochran holds a direct ownership interest.

Plaintiff suggests that a theory of joint and several liability is included within the concept of vicarious liability and agency, which it pleaded in its complaint, and thus that no more specific pleading was required to litigate a claim of joint and several liability. Plaintiff suggests, for example, that it has already pleaded that William Cochran "acted as the agent of all named Defendants, and therefore all Defendants are jointly and severally liability for his discriminatory acts as a matter of law." (DE 186 at 1). A critical allegation missing from the complaint, however, is that William acted as agent of all named Defendants without differentiation, as a single, integrated enterprise, as plaintiff now asserts in its contentions included in the pretrial order. No such allegation was included or implied by the allegations in the amended complaint, however.

Indeed, the amended complaint describes the actions of William Cochran on behalf of each of the LLCs, not alleging that they are a single, integrated, enterprise, but rather with separate reference to each individual LLC and Richard Cochran (Am. Compl. ¶¶ 6-9). To proceed on a theory that William Cochran acted as an agent of all the LLC defendants and Richard Cochran together as a single unit, requires an antecedent finding of alter ego or piercing the corporate veil, which was not pleaded.

Plaintiff also suggests that defendants had sufficient notice through discovery of facts that the LLCs were undercapitalized, shared common ownership, co-mingled funds, and failed to follow corporate formalities, and that defendants William Cochran and Richard Cochran were in control of these entities such that they did not have separate personalities, requiring piercing the corporate

10

veil. "[D]iscovery," however, "is an exercise in fact-finding, and it is the complaint – not depositions or interrogatories – that provides 'fair notice' to defendants of the allegations against them." Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 420 (4th Cir. 2014). Information sought or obtained in discovery, therefore, "is inapposite of the notice issue," and plaintiff may not rely upon discovery responses to introduce a new theory of liability into trial. Id.; see also Doe v. Roe, No. 89-6817, 1990 WL 86285 *2 (4th Cir. June 13, 1990) (holding that district court properly refused to consider at summary judgment "discovery related to a new, unpleaded theory of [plaintiff's] case," liability under a "'failure to train' theory," where "the case had been pending for nearly six months and was set for trial within two weeks," and defendants "would be prejudiced by preparing to defend against a new cause of action at that late date").

Finally, to the extent plaintiff suggests that it should be permitted to amend its complaint, such amendment is not warranted. While "leave [to amend] shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), a "motion to amend may be denied when it has been unduly delayed and when allowing the motion would prejudice the nonmovant." Lone Star Steakhouse & Saloon v. Alpha of Va., Inc., 43 F.3d 922, 940 (4th Cir.1995). "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing . . . . [T]he further the case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant or that a court will find bad faith on the plaintiff's part." Laber v. Harvey, 438 F.3d 404, 427 (4th Cir.2006). For example, in Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 439, 440 (4th Cir. 2011), the Fourth Circuit held that district court did not abuse its discretion in denying amendment to a counterclaim to "include allegations of conspiracy and fraud" where the amendment was not fully briefed until "two weeks before the scheduled trial date" and,

11

if allowed, "would likely have required further discovery," and "would substantially change the nature and scope of trial."

In this case, plaintiff's suggested amendment to add a theory of joint and several liability, based upon alter ego or piercing the corporate veil, is prejudicial and unduly delayed. As in Newport News, the suggestion of amendment was made at the "eleventh hour before the then-scheduled trial date," and if allowed "would substantially change the nature and scope of the trial," id. at 440, which is already underway. Defendants have had no reason to explore or prepare possible defenses to these new theories, some aspects of which involve corporate entities, Cochran Builders and Build Tech, Inc., that are not parties to the case. As such, the new theory of liability would require further investigation, preparation, and possibly further discovery, during the midst of trial. Accordingly, amendment at this point in trial would prejudice defendants.

Further, where plaintiff knew of evidence allegedly supporting its new theory during the course of discovery, it unduly delayed in asserting this theory of relief. If the parties had "squarely addressed the . . . liability theory in their summary judgment briefs" then the complaint could have been constructively amended to include that claim. Interstate Petroleum, 249 F.3d at 227 (quoting Whitaker, 151 F.3d at 663).[1] But, plaintiff did not do so, and indeed suggested in its summary judgment brief that its theory of liability, based upon agency and vicarious liability, was all but settled and conceded. As noted above, plaintiff represented in its summary judgment brief that

---

[1] Partly in this respect, the court also finds inapposite United States v. Gumbaytay, 757 F.Supp.2d 1142, 1149-50 (M.D. Ala. 2011), cited by plaintiff, in which the court denied summary judgment on a pattern or practice claim against individual property owners although there was no evidence that the individual owners acted in concert in hiring a particular property manager who engaged in discriminatory housing conduct. Gumbaytay was decided at the summary judgment stage of the case, and it did not address the issue presented here, where on the eve of trial, plaintiff introduces a joint and several liability theory of relief, premised upon alter ego or piercing the corporate veil. Gumbaytay addresses neither pleading issues, nor application of alter ego or piercing the corporate veil.

12

"Defendants [WRC], [EKP], [EmLan] and [Richard Cochran] are each vicariously liable for the actions of William Cochran as manager of the properties each owns." (DE 121 at 2) (emphasis added). It invited no further discussion or inquiry as to this theory of liability, noting instead that "[i]ndeed, Defendants do not raise any arguments to the contrary in their motion, nor could they – there is no factual dispute that William Cochran had primary responsibility for all aspects of the day-to-day rental and maintenance of the Defendants' properties." (Id. at 3) (emphasis added). Only now, on the eve of trial, has plaintiff introduced a contention that could transform an essentially-stipulated agency theory of liability into a sharply-contested joint and several theory of liability, premised upon alter ego and piercing the corporate veil. As such, the court finds that plaintiff unduly delayed in seeking amendment to its claims.

Accordingly, the court rejects plaintiff's arguments that it should be allowed to present at trial a joint and several liability theory of relief, premised upon alter ego or piercing the corporate veil. Nothing in this order is intended to prevent plaintiff from making any argument, allegation, jury instruction, or factual contention that the defendants EKP, WRC, EmLan, and Richard Cochran are vicariously liable for the actions of defendant William Cochran as their agent with respect to properties owned by each such defendant, not dependent upon a theory of joint and several liability arising from alter ego or piercing the corporate veil.

## CONCLUSION

For the foregoing reasons, the court GRANTS defendants' motion in limine (DE 177). Plaintiff is prohibited from offering at trial any argument, allegation, jury instruction, or factual contention that William Cochran's co-defendants may be held jointly and severally liable for William Cochran's purportedly wrongful conduct. Plaintiff is prohibited from offering at trial any

13

argument, allegation, jury instruction, or factual contention that Richard Cochran may be held liable for actions by William Cochran that occurred at or related to properties other than the one property in which Richard Cochran holds a direct ownership interest.

SO ORDERED, this the 14th day of January, 2015.

LOUISE W. FLANAGAN
United States District Judge

14