IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:12-CV-000220-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| WILLIAM I. COCHRAN, III; WRC, | ) | |
| LLC; EKP, LLC; EMLAN | ) | |
| PROPERTIES, LLC; and RICHARD A. | ) | |
| COCHRAN, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on defendants' motion for attorney's fees and expenses (DE 229), defendants' motion for bill of costs (DE 231), and plaintiff's motion for disallowance of costs (DE 240). Plaintiff responded further in opposition to the motion for attorney's fees and expenses, and defendants replied. In this posture, the issues raised are ripe for ruling. For the following reasons, defendants' motions are denied and plaintiff's motion is granted.

## BACKGROUND

In September 2012, plaintiff commenced this action asserting a claim under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619, against individual defendant William I. Cochran, III ("Cochran") and various entities under which he has managed residential rental properties, namely defendants WRC, LLC; EKP, LLC; and EmLan Properties, LLC. Plaintiff sought damages on behalf of certain tenants and associated persons asserted to be "aggrieved persons" allegedly injured

by defendants' discriminatory conduct. Plaintiff also sought declaratory and injunctive relief, as well as a civil penalty.

In February 2013, defendants filed a motion to dismiss for failure to state a claim and motion for attorney's fees. The court denied the motion to dismiss in May 2013, and subsequently dismissed the motion for attorney's fees without prejudice. On September 19, 2013, plaintiff filed, with leave of court, an amended complaint, adding Richard A. Cochran ("Richard Cochran"), Cochran's brother, as a defendant.

Plaintiff moved to strike defense expert Dr. Kane on September 20, 2013, arguing that the disclosure of Dr. Kane as a defense expert was untimely. The court denied the motion and allowed an extension of discovery for deposition of Dr. Kane. On December 30, 2013, plaintiff moved for leave to identify six additional witnesses on whose behalf it may seek damages as "aggrieved persons." In opposition, defendants moved to strike designation of two additional witnesses, Justice Blow and Sterling Council, as "aggrieved persons." The court denied the motion for leave, and also denied defendants' motion to strike.

Defendants moved for summary judgment on January 14, 2014, and plaintiff moved to exclude defense expert Dr. Kane the next day. Defendants filed a motion for sanctions on February 13, 2014. On August 13, 2014, the court denied defendants' motion for summary judgment, denied defendants' motion for sanctions, and denied without prejudice plaintiff's motion to exclude. The court directed the case to proceed to a bifurcated jury trial, where, in the first, liability, phase of trial, plaintiff had the burden of establishing a prima facie case of a pattern or practice of discrimination through denial of rights guaranteed by the FHA. The court directed that, in the event plaintiff met its burden in the first phase of trial, the case would proceed to a second, remedy, phase of trial, at

2

which plaintiff would have the burden of establishing the right to damages and other relief, and the extent thereof, for individual aggrieved persons.

The court set the matter for final pretrial conference on December 23, 2014, and for trial commencing January 13, 2015. In the meantime, the parties proceeded to a court-hosted settlement conference on October 21, 2014, which resulted in an impasse. On December 9, 2014, the parties filed seven motions in limine, four by plaintiff and three by defendants, which motions were fully briefed. At the pretrial conference on December 23, 2014, the court took up administrative trial issues and objections noted in the parties' proposed pretrial order, and the court rendered ruling on several motions in limine. The court directed further briefing concluding January 9, 2015, on an oral motion raised by defendants pertaining to the structure of the verdict form.

On December 30, 2014, the court denied defendants' objection to plaintiff's proposed use of video deposition testimony of a defendant in plaintiff's case-in-chief. On January 6, 2015, the court denied plaintiff's motion to exclude evidence pertaining to former landlords of aggrieved person, Josette Cruz ("Cruz"), and took under advisement the motion as it relates to former landlords of Lorrie Reddick ("Reddick"). On January 14, 2015, the court granted defendants' motion to exclude plaintiff's arguments and contentions relating to defendants' joint and several liability, based upon an unpleaded theory of alter ego or piercing the corporate veil.

In the meantime, on January 13, 2015, the court entered an amended joint pre-trial order, which set forth 307 exhibits that plaintiff might seek to introduce at trial, and 415 exhibits defendants might seek to introduce at trial. Plaintiff identified 32 witnesses it expected to call at trial, and defendants identified 13 witnesses they expected to call at trial. The parties estimated needing 16 days of trial time. Per section I.G. of the court's amended scheduling order, the court

limited the parties to 32.5 hours per side in the liability phase and 19.5 hours per side in the remedy phase of the trial.

Trial commenced on January 13, 2015, and ran until January 29, 2015. In the course of trial, plaintiff spent 20 hours, 17 minutes, presenting its case, and defendants spent 28 hours, 34 minutes. Plaintiff presented testimony of the following 19 witnesses:

1. Earleen Windley

2. Cynthia Grimes

3. Lora Grimes

4. Shenta Spencer

5. Sara Peed

6. Casey Canon

7. Richard Cochran

8. William Cochran, III (video deposition and live testimony)

9. Josette Cruz

10. David Caddigan

11. Laurcretia Guilford

12. Terisha Lynn

13. Justice Blow

14. Kila Whitfield

15. Timothy Cox

16. Tammy Grimes

17. Tommy Clark

18.    Kathleen Maxwell

19.    Stephanie Allen

At the conclusion of the government's case in chief on January 20, 2015, defendants moved for directed verdict, pursuant to Federal Rule of Civil Procedure 50. The court heard argument from the parties on the motion and took the motion under advisement. Defendants then proceeded to present testimony of the following 22 witnesses:

1.    Clarence Gray

2.    Allen Pittman

3.    Catherine Biggs

4.    Stacey Pack

5.    Karla Jean Neal

6.    Dean Burbage

7.    Evonda Gibbs

8.    Malissa Silverthorne

9.    John Spencer

10.    Steven Wood

11.    Bart Ward

12.    Alton Ward

13.    Richard Cochran

14.    Anthony Hines

15.    Ronnie Stroud

16.    Robert Grimes

17.   Gina Horton

18.   Maurice Everett

19.   Kyle Cochran

20.   Justin Spruill

21.   Ruth Dudley

22.   William Cochran, III

On January 23, 2015, at a recess in the testimony, the court took up and denied defendants' motion for directed verdict. (Tr. vol. 8 at 116). On January 27, 2015, after the conclusion of defendants' evidence, and plaintiff's rebuttal evidence, defendants renewed their oral motion for directed verdict under Rule 50. The court took the motion under advisement.

Jury deliberations began in the afternoon on January 28, 2015. On January 29, 2015, after having deliberated a total of approximately 5 hours, the jurors posed a question to the court requesting a list of names of aggrieved persons, and asking whether the aggrieved persons stand to benefit financially from the outcome of the case. After hearing argument from the parties, the court instructed the jury as follows:

> If you find that the defendants violated the Fair Housing Act, then you will be called upon to determine whether the defendants caused damages to any of the aggrieved persons who testified in this case. The persons designated by the plaintiff as aggrieved include: Della Boyd, Tommy Clark, Tammy Grimes, Josette Cruz, Cynthia Grimes, Lora Grimes, Laurcretia Guilford, Terisha Lynn, Justice Blow, Shenta Spencer, Kila Whitfield and Earlean Windley.

(Tr. vol. 12 at 21).

Following the court's response to their question, after approximately 40 minutes of additional deliberations, the jury returned a verdict of no liability, finding that plaintiff had not proved that defendant William Cochran engaged in a pattern or practice of discrimination, or denial of rights,

under the FHA. According to the form of verdict, the jury thus did not reach the question of liability as to the other defendants acting as agents of defendant William Cochran, III.

In light of the verdict, the court terminated the Rule 50 motion and other motions in limine not ruled on in the course of trial as moot. On February 10, 2015, the court entered judgment in favor of defendants. Plaintiff did not appeal. On May 11, 2015, defendants filed an "application for costs, fees, and other expenses in accordance with the [EAJA]," seeking a total of $792,025.99, in costs, attorney's fees, and expenses. (DE 227). This document was corrected and re-filed on May 12, 2015, as two separate motions: (1) the instant motion for attorney's fees and expenses (DE 229), and (2) the instant motion for bill of costs (DE 231). On May 22, 2015, plaintiff moved to disallow costs as untimely sought. (DE 240).

In their motion for attorney's fees and expenses, defendants note that they seek a total of $792,025.99 in "costs, attorney's fees, and expenses." (See DE 229 at 1). Of this total amount, however, $714,535.50 is requested as attorney's fees, $16,733.52 as taxable costs, and $60,755.97 as non-taxable costs and other client expenses. (See DE 229 at 1; DE 235-1 at 5). On June 16, 2015, defendants updated the amount requested as attorney's fees to $727,046.50, which brings the grand total amount of requested costs, attorney's fees, and expenses, to $804,535.99. In their motion for bill of costs, defendants reiterate that they seek taxable costs in the amount of $16,733.52. (DE 231).

## DISCUSSION

A.    Attorney's Fees

The Equal Access to Justice Act ("EAJA"), provides for an award of reasonable attorney's fees and expenses in accordance with the following provision:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was <u>substantially justified</u> or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added).[1]  In addition, the statute provides:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action,[2] submit to the court an application for fees and other expenses . . . . The party shall also allege that the position of the United States was <u>not substantially justified</u>. Whether or not the position of the United States was <u>substantially justified</u> shall be determined on the basis of the record . . . which is made in the civil action for which fees and other expenses are sought.

§ 2412(d)(1)(B) (emphasized).

The Supreme Court has interpreted the phrase "substantially justified," emphasized in the quotations above, to mean "justified to a degree that could satisfy a reasonable person." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988).  "[A] position can be justified even though it is not correct, and . . . it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." <u>Id.</u> at 566 n.2.  The phrase, thus, does not connote "'justified to a high degree,' but rather 'justified in substance or in the main.'" <u>Id.</u> at 565.  As such, the standard is comparable to one that is "satisfied if there is 'a genuine dispute,'" or "if reasonable people could differ as to the appropriateness of the contested action." <u>Id.</u>  "The United States has the burden of showing that its position was substantially justified." <u>United States v. 515 Granby, LLC</u>, 736 F.3d 309, 315 (4th Cir. 2013).

---

[1]  A separate subsection, § 2412(a)(1), governs procedures for award of costs, and will be addressed in section B. of this order, further below.

[2]  "Final judgment" is defined in the statute as "a judgment that is final and not appealable, and includes an order of settlement." § 2412(d)(2)(G).

"[W]hen determining whether the government's position in a case is substantially justified, we look beyond the issue on which the petitioner prevailed to determine, from the totality of circumstances, whether the government acted reasonably in causing the litigation or in taking a stance during the litigation." Roanoke River Basin Ass'n v. Hudson, 991 F.2d 132, 139 (4th Cir. 1993). In so determining, the court may look to "objective indicia," such as "the stage in the proceedings at which the merits were decided," although such indicia do not provide, in themselves, a "conclusive answer." Pierce, 487 U.S. at 569. "[M]erits decisions in a litigation, whether intermediate or final . . . obviously must be taken into account both by a district court in deciding whether the Government's position, though ultimately rejected on the merits, was substantially justified, and by a court of appeals in later reviewing that decision for abuse of discretion." EEOC v. Clay Printing Co., 13 F.3d 813, 815 (4th Cir. 1994).

The government opposes the motion for attorney's fees in this case on the basis that its litigation position was substantially justified. It points to numerous witnesses who testified at trial consistent with the facts alleged in the complaint and proffered at summary judgment, as well as significant documentary evidence supporting such facts. The government also points to this court's rulings in denying defendants' motions to dismiss, for summary judgment, for sanctions, and for judgment as a matter of law, as indicative of the substantial justification in the government's position. Considering the totality of the circumstances, in light of the requisite standard under the EAJA, the court is compelled to find the government's position substantially justified.

The court begins with its own rulings assessing the government's case at various stages of the proceedings. In denying defendants' motion to dismiss the complaint in May 2013, the court reasoned that "[w]here, as here, the government raises claims pursuant to pattern or practice and

group of persons theories, courts have held that details about specific incidents of discrimination need not be included in the complaint." Order, May 10, 2013, at 5. "Accordingly, in this case although the complaint does not contain details about specific incidents of discrimination, plaintiff has alleged sufficient facts to support pattern or practice and group of person theories under the FHA." Id. at 6. "[T]he complaint lists acts which include refusing to perform and delaying performance of maintenance or repairs and refusing to credit tenants for maintenance or repairs they paid for and/or performed themselves, all in reference only to African-American tenants residing at properties managed by defendant Cochran and owned by his co-defendants in this case." Id. "The pervasive nature of the alleged discriminatory conduct permits the inference that these are the types of acts the government has authority to enforce through civil suit." Id. at 6-7.

In evaluating defendants' motion for summary judgment, the court addressed both strong points and weak points in plaintiff's case, concluding that plaintiff had forecasted sufficient evidence to proceed on nearly all of its legal theories of relief. The court reasoned:

> This case presents a close question regarding the application of a pattern or practice of discrimination. Unlike many pattern or practice cases evaluated by the Supreme Court and the Fourth Circuit, plaintiff has not introduced any statistical evidence of discrimination. Rather, plaintiff seeks to prove a pattern or practice by anecdotal evidence of failures to repair and racially derogatory statements. Despite the limited range of evidence forecasted, considered cumulatively in the light most favorable to plaintiff, the evidence in its entirety supports an inference of a systematic practice or policy to deprive black Americans' rights guaranteed under the Fair Housing Act on the basis of their race.

Order, August 13, 2014, at 17. The court identified testimony by seven individuals providing plaintiff's "most compelling evidence" of discrimination in housing: Lynn, Cruz, Blow, Council, Boyd, Cynthia Grimes, Lora Grimes. Id. at 17-18. The court identified additional testimony by

three individuals permitting an inference of discrimination: Reddick, Windley, and Casey Cannon. Id. at 18. Finally, the court identified further circumstantial evidence of discrimination. Id. at 18-19.

Furthermore, the court rejected defendants' argument in favor of summary judgment and sanctions under Rule 11, based on defendants' assertion that plaintiff's evidence was uncorroborated, incredible, or contracted by other evidence in the record. Id. at 22 & 28. The court observed that the testimony proffered by plaintiff was specific, plausible, and grounded in specific instances of conduct. Id. at 22. Accordingly, the court held that inconsistencies in the testimony were "categorically within the province of the fact finder to weigh and consider." Id.

Prior to trial, the court denied plaintiff's motion to exclude testimony at trial by former landlords of aggrieved person, Cruz, and took under advisement the motion as it relates to former landlords of Reddick. The court reasoned that such testimony pertaining to Cruz could support the legitimacy of defendant Cochran's actions and could be used to attack the credibility of Cruz, rejecting, among other arguments, plaintiff's contention that the testimony would be unfairly prejudicial. Order, January 6, 2015, at 5-8.

Following presentation of plaintiff's case at trial, the court considered and denied defendants' motion for directed verdict, noting:

> [The court] finished going through the transcript considering the Defendant's [sic] Rule 50 motion made at the close of the Government's case and [the court is] compelled to deny it.

(Tr. vol. 8 at 116). Following presentation of defendants' evidence at trial, and again following closing arguments, the court took under advisement defendants' renewed motion for directed verdict, allowing the case to proceed to jury deliberations.

11

In sum, the court's orders allowing plaintiff's case to proceed through to verdict in this matter provide objective indicia that the government was substantially justified in continuing with bringing and continuing to pursue the case through trial. The court's summary judgment ruling confirmed that plaintiff had "affirmatively demonstrate[d] with specific evidence that there exist[ed] a genuine issue of material fact requiring trial." Order, August 13, 2014, at 9. The court's ruling on defendants' motion for directed verdict necessarily entailed a determination that "a reasonable jury would . . . have a legally sufficient evidentiary basis to find for the" plaintiff. Fed. R. Civ. P. 50(a)(1).

Further, although the court did not decide defendants' renewed motions for directed verdict following presentation of defendants' evidence, review of the evidence presented at trial confirms that the government had a reasonable basis in both law and fact to proceed through trial to verdict. Testimony presented at trial was consistent with much of the testimony proffered in response to defendants' motion for summary judgment. For example, Windley testified that she withheld rent due to lack of repairs and Cochran stated "I thought you people knew how to get money." (Tr. vol. 1 at 51 & 54). Cynthia and Lora Grimes testified that Cochran argued with her about a rental unit, calling them "nigger," and "black bitch," (id. at 83, 98, 120, 127-29, 135), including in reference to a broken refrigerator "You niggers always needing something, got to have something fixed." (Id. at 129).

Sara Peed offered testimony regarding prompt fixing of maintenance issues for herself as a white tenant, with Cochran allowing reimbursement of expenses as rent reduction. (Tr. vol. 2 at 59 & 66). Cochran completed repairs promptly for the Cannons, who were white, and also made the comment that "it did not surprise him that there were roaches in the house because the people that

12

lived there before . . . were black and they weren't clean." (Id. at 77). Boyd testified that Cochran

treated white tenants "with much more dignity and respect than he did us," (id. at 107), and "heard

him use 'nigger' all of the time." (Id. at 108). Further, he testified that Cochran stated "[t]hese

niggers don't know how to keep my house," "[a]nd I'll get their asses out of here, and I wish I had

never put them in here." (Id. at 108). Plaintiff offered videotaped testimony of Cochran to

demonstrate inconsistencies in testimony, including with respect to accounting for repairs, and

statements made to tenants. (E.g., id. at 148-154, 159-160).

　　　Cruz testified that Cochran was unresponsive to her repair requests (Tr. vol. 3 at 59-67),

placed a ghost at her front door (id. at 84), told her "you're black, I'm white, you're in the South

now, you'll never beat me," (id. at 85), and "[o]nce you move out, another ignorant nigger is going

to move in." (Id. at 87). Caddigan, a legal aid attorney, corroborated Cruz's testimony, and stated

that Cochran said Cruz "allows her children to run around like a bunch of monkeys." (Id. at 178).

Lynn testified that Cochran withheld repairs and Cochran said "he wasn't buying no nigger no

refrigerator," (Tr. vol. 4 at 10-19), which testimony was corroborated by testimony of her son. (Id.

at 114). Tammy Grimes testified that, upon withholding rent due to failure to repair, Cochran said

"[t]hat's why I don't like renting to black people because they don't pay." (Id. at 228).

　　　In sum, the evidence that the court identified as the most compelling evidence in support of

plaintiff's case at the summary judgment stage was presented during testimony at trial. Although

defendants presented significant countervailing evidence in presenting their defense, plaintiff's

evidence was sufficient in terms of corroboration and individual numbers to create a genuine issue

of fact for the jury, and thus a "reasonable basis both in law and fact" for supporting plaintiff's case.

Pierce, 487 U.S. at 565. Where the case was heavily dependent upon competing testimony regarding

reputation, credibility, and bias of witnesses testifying as to both parties, plaintiff has demonstrated that it was "substantially justified" in proceeding forward with trial, despite the significant and vigorous defense offered.

Defendants' arguments seeking to characterize plaintiff's case as lacking in substantial justification are unavailing. Defendants assert broadly, for example, that "the DOJ brought this case without conducting a proper pre-suit inquiry and refused to end the harassment campaign even when formal discovery revealed its claims meritless." (DE 232 at 4). In support of this proposition, defendants cite to their own motions to dismiss, for summary judgment, and for sanctions. The court's orders, however, denying each such motion, belie defendants' suggestion that plaintiff's case had no reasonable basis to proceed. In particular, the court's order on summary judgment is inconsistent with defendants' assertion that formal discovery revealed plaintiff's claims meritless.

Defendants also contend that weaknesses in plaintiff's case demonstrate that plaintiff was not substantially justified in bringing or continuing the litigation to trial. Defendants point out that plaintiff's case was "supported by very little but anecdotes." (DE 244 at 3). In addition, defendants point to "testimony of city and housing authority professionals, whose testimony demonstrates the incredulity and implausibility of the aggrieved persons' stories." (Id.) (internal quotations omitted). This court, however, already addressed the anecdotal nature of plaintiff's evidence in evaluating the merits of the claims at the summary judgment stage of the case. (DE 130 at 17). The court also recognized that defendants had presented "evidence of considerable weight and probative force" that tended to show "Cochran never made the challenged statements and in fact treated all of his tenants fairly and with respect." (Id. at 22-23). Such evidence, the court determined, "is sufficient to meet [their] burden of production to counter plaintiff's prima facie case, . . . but it is not sufficient

14

for judgment as a matter of law in their favor." (Id. at 23 (citing Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 360 (1977)). "Rather, it creates a jury issue as to whether plaintiff has established a pattern or practice of discrimination." (Id. (citing Teamsters, 431 U.S. at 360 n.46 & n.50)).

Defendants also suggest the possibility that, even where claims survive dispositive pretrial motions, a trial may "reveal[] profound weaknesses in the government's case," (DE 232 at 5 n.23), and the substantial justification standard requires consideration of the evidence notwithstanding the outcome of pretrial motions. (See DE 244 at 4-5). In the present case, however, the parties' trial evidence tracked closely the evidence offered at summary judgment. The evidence presented at trial in favor of defendants was presented also at the time of summary judgment, as discussed in the court's order on summary judgment. (DE 130 at 22-23). Thus, while it is conceivable that a case could survive summary judgment but later turn out to be lacking in any reasonable basis in fact and law, this is not such a case.

Notably, cases defendants rely upon where fees were awarded involve much different circumstances than those presented here. For example, defendants point to EEOC v. Clay Printing Co., 13 F.3d 813, 815 (4th Cir. 1994), where the Fourth Circuit affirmed an award of attorney's fees under the EAJA after summary judgment was granted to the defendants, and against the government, in a discrimination case. The court relied largely on the district court's and Fourth Circuit court's prior assessment of the evidence at summary judgment, noting their previous assessment that "EEOC has made a vain attempt to create a triable issue of age discrimination out of little more than thin air." Id. The court noted "[i]t is hard to imagine how the district court could have used stronger

language to describe the weakness of EEOC's case," providing the following examples from the district court's summary judgment order:

> The discharge claims advanced here are, to say the least, simply implausible . . . . The evidence shows, without any doubt, that [the company's] employees were treated basically the same . . . . [EEOC's evidence] reveals no tenable basis whatsoever for the constructive discharge theory . . . . The record in this case is characterized, repeatedly, by implausibility. The District Court noted that none of the former employees had testified that he or she had any evidence or information to support any claim of age discrimination. Moreover, the court noted that no statistical evidence had been adduced. All in all, the unmistakable tenor of the opinion is that EEOC wasted everybody's time and was grasping at evidentiary straws.

Id. at 816.

Thus, in Clay Printing, unlike in the present case, the court was able to draw upon its own prior, contemporaneous, assessment of the evidence at summary judgment, which statements revealed a complete lack of merit in the government's cases, in determining whether the government's position was substantially justified. Moreover, unlike in the present case, there was no reference to any direct evidence of discrimination or compelling evidence of discrimination as the court found in this case, both based on evidence at summary judgment and at trial. For example, there was no mention of multiple and repeated testimonial references to equivalent derogatory terms such as "nigger," "black bitch," or "monkeys." Further, while the evidence showed in Clay Printing that "employees were treated basically the same," plaintiff in the present case offered testimony by both black and white tenants of differences in treatment in provision of maintenance on the basis of race. Clay Printing, in sum, is wholly inapposite and instructively distinguishable from the present case. The main factors that lead to an award of EAJA fees in Clay Printing, being the grant of summary judgment and absence of plaintiff's own evidence showing discrimination, are precisely the factors lacking in the present case.

16

Defendants also cite to Hess Mechanical Corp. v. NLRB, 112 F.3d 146, 150 (4th Cir. 1997), where the court reversed and remanded an administrative denial of attorney's fees by the NLRB after the plaintiff prevailed in administrative proceedings before an Administrative Law Judge. Hess is inapposite for multiple reasons, however. First, Hess did not involve litigation in the district court proceeding to jury trial following the denial of a summary judgment motion. Rather, it involved an administrative complaint filed by the NLRB asserting that a company had violated the National Labor Relations Act by firing an employee for union activities. Id. at 148. The matter proceeded to a "one-day hearing," after which "an administrative law judge recommended that the complaint be dismissed in its entirety." Id.

Second, the evidence of a violation in Hess was much more limited than that presented here. "The ALJ found that the only evidence that [the fired employee] had engaged in or was fired for union activity was [his] own uncorroborated testimony." Id. The Fourth Circuit noted that the government only pointed to potentially corroborating testimony on appeal, and did not even present such testimony at hearing. Id. at 149. Third, the government never disputed the company's legitimate reasons for firing in any respect and "had no evidence to suggest otherwise." Id. at 149 & 150. The court thus rejected the government's argument that pre-hearing evidence was "not conclusive," determining instead that "[a]dditional inquiry in this case, of course, would have uncovered only mounting evidence favoring [the company]." Id. at 150.

None of these factors are present in the instant case, where not one but multiple individuals testified as to a pattern or practice of discrimination, and where the government disputed the non-discriminatory reasons presented by defendants. (See, e.g., Tr. vol. 11 at pp. 17-19, 27, 32-34, 49-51; 118-123). The government offered corroborating testimony at trial, much different from waiting

to assert it on appeal following denial of attorney's fees, as was the case in <u>Hess</u>.  In sum, <u>Hess</u>, like <u>Clay Printing</u>, illustrates well the types of differences in procedural posture and substantive evidence that are necessary to justify an EAJA award.

Additional cases cited by defendants are inapposite for similar reasons.  For example, <u>EEOC v. Propak Logistics, Inc.</u>, 746 F.3d 145, 147 (4th Cir. 2014), involved an award of attorney's fees after the district court granted summary judgment in favor of the defendant company, and because "events that occurred during the EEOC's administrative investigation precluded the EEOC from obtaining either injunctive or monetary judicial relief."  <u>Introcaso v. Cunningham</u>, 857 F.2d 965, 967 (4th Cir. 1988), involved an award of attorney's fees after the district court allowed the case to proceed to trial, without mention of any prior summary judgment proceedings.  The court of appeals found no abuse of discretion in the fee award where the plaintiff was "fully aware of the evidence brought out in the prior state administrative proceedings that, in discharging him, defendants were motivated by the discovery of the missing school typewriter," <u>id.</u> at 968, contrary to plaintiff's initial pleading allegation that the defendants knew "that there was not sufficient cause for discharge." <u>Id.</u> at 966.[3]

Both <u>Propak</u> and <u>Introcaso</u> also involved application of the Title VII standard for attorney's fees, under which the court must find plaintiff's action was "frivolous, unreasonable, or without foundation." <u>Id.</u> at 151.  A more analogous case applying the same standard as <u>Propak</u> and <u>Introcaso</u> is <u>EEOC v. Great Steaks, Inc.</u>, 667 F.3d 510, 518 (4th Cir. 2012), where the Fourth Circuit

_____

[3]  Similar comparison is warranted with the case <u>Hutchinson v. Staton</u>, 994 F.2d 1076, 1079 (4th Cir. 1993), not cited by defendants, where at the close of plaintiff's evidence at trial, the district court entered directed verdicts for defendants "finding that the only evidence of election-rigging was 'purely speculative' and 'mere suspicion.'"  Although the district court in <u>Hutchinson</u> denied a motion for summary judgment in allowing the claims to proceed to trial, there was no discussion of the summary judgment order in the fee determination decision, much less whether it included the type of detailed analysis included in the court's summary judgment order in the instant case. <u>See id.</u> at 1081.

affirmed the denial of a fee award, and underscored the significance of denial of a dispositive motion, stating:

> If the district court denies the motion [for directed verdict], it signals that a jury could reasonably find for the plaintiff. Although we do not preclude their existence, <u>we are hard-pressed to imagine circumstances where the district court could make this determination and nevertheless deem the plaintiff's case frivolous, unreasonable, or groundless</u>.

<u>Id.</u> (emphasis added). Furthermore, the court rejected the argument that inconsistencies in evidence and contradictory testimony rendered the case groundless. The court reasoned that "[t]he inconsistencies in [the sole claimant's] allegations and the contradictory affidavit from her coworker simply created factual issues for a jury to resolve; they did not make her allegations frivolous, unreasonable, or groundless." <u>Id.</u> at 519. Although applying a different standard, the same reasoning applies in the instant case, only with greater force, where not just one claimant but multiple claimants testified as to discriminatory conduct.

In sum, based upon objective factors including the progression of the case and the court's prior orders, as well as the court's renewed consideration of the evidence in support of and in opposition to plaintiff's case, the court finds that the government was substantially justified in its litigation position. Therefore, the court must deny plaintiff's motion for attorney's fees under the EAJA.

B.    Costs

Defendants seek an award of taxable costs in the amount of $16,733.52, in accordance with the EAJA. Unlike the provision for award of attorney's fees and expenses, the EAJA provides for award of costs to the prevailing party, without need for inquiry into whether the position of the

government was substantially justified. In particular, the EAJA provides for an award of costs on the basis of the following provision:

> Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title,[4] but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. A judgment for costs when taxed against the United States shall, in an amount established by statute, court rule, or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation.

28 U.S.C. § 2412(a)(1). In this case, defendants seek in their bill of costs fees for service of summons and subpoena, fees for transcripts, fees for printing, fees for witnesses, and fees for copies, which fees are covered by the categories enumerated in § 1920. Accordingly, as prevailing party in this litigation, defendants may claim such an award of costs, under the EAJA, in the amount of $16,733.52.

Plaintiff moves, however, to disallow defendants' application for costs on the basis that it is untimely. Federal Rule of Civil Procedure 54(d)(1) provides:

> Unless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law. The clerk may tax costs on 14 days' notice.

Local Civil Rule 54.1 provides, in pertinent part:

---

[4] Section 1920 provides:
"A judge or clerk of any court of the United States may tax as costs the following:
(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree."

>     <u>All applications for costs must be made within fourteen (14) days after the entry of</u>
>     <u>judgment</u>. Objections to applications for costs must be filed within fourteen (14) days
>     after service of the application for costs.
>
>     (a)     Filing Bill of Costs.
>
>         (1)     A prevailing party may request the clerk to tax allowable costs, other
>                 than attorney's fees, in a civil action as part of a judgment or decree
>                 by filing a bill of costs, on AO form 133, available on the court's
>                 internet website: http://www.nced.uscourts.gov/forms/Default.aspx.
>
>         (2)     The original bill of costs shall be filed with the clerk, with copies
>                 served on adverse parties.
>
>         (3)     <u>The failure of a prevailing party to timely file a bill of costs shall</u>
>                 <u>constitute a waiver of any claim for costs</u>.

Local Civil Rule 54.1(a) (emphasis added). The court entered judgment in this case on February 10,

2015. Accordingly, under Local Rule 54.1, plaintiff argues that defendants had until February 24,

2015, to file an application for costs. Defendants counter that Local Rule 54.1 does not govern their

application for costs, and that instead the 30 day time period under the EAJA, 28 U.S.C. §

2412(d)(1)(B), for filing an application for fees and other expenses should apply. Under this time

period, defendants would have 30 days from April 13, 2015 (the date of final judgment, defined as

the date the action became non-appealable), or until May 12, 2015, to file their application for costs.

As an initial matter, contrary to defendants' contention, § 2412(d)(1)(B) does not provide

a 30 day time period for filing an application for costs. Rather, § 2412(d)(1)(B) provides a 30 day

time period to file an "application for fees and other expenses," and § 2412(d)(1)(A) expressly

distinguishes such fees and other expenses, as being "in addition to any costs awarded pursuant to

[§ 2412(a)]." In contrast to the 30 day time period for an application for fees and other expenses,

§ 2412(a) does not provide any time limit on filing of an application for costs. <u>See</u> § 2412(a). Nor

does any other provision in the EAJA provide any time limit on an application for costs.

Thus, the issue presented is whether Local Rule 54.1, which mandates a 14 day time limit, or the EAJA, § 2412(a), which mandates no time limit, controls. Neither party cites any Fourth Circuit case addressing this question, and this court has not found any controlling law on point. Nevertheless, other courts of appeals have addressed the question in addressing comparable rules. For example, in Haselwander v. McHugh, 797 F.3d 1, 2 (D.C. Cir. 2015), the court determined that a 14-day time limit for filing an application for costs in Federal Rule of Appellate Procedure 39 applied to an application of costs made pursuant to the EAJA. In so holding, the court recognized the absence of a time limit in the EAJA, § 2412(a):

> The omission of 'costs awarded pursuant to subsection (a)' from sub-paragraph (d)(1)(B) [of the EAJA], which sets the 30-day time limit, indicates that the 30-day limit applies only to an application for attorney's fees and expenses. The statute does not provide a similar time limit for an application for costs, thus the 14-day time limit in Federal Rule of Appellate Procedure 39 applies and bars Haselwander's application for costs.

Id.

In Fruit v. Astrue, 604 F.3d 1217, 1220 (10th Cir. 2010), by contrast, the court determined that a 14-day time limit imposed by local rule for filing costs "pursuant to 28 U.S.C. § 1920" did not apply to an application for costs made pursuant to the EAJA. The court reasoned in dicta, however, that other local rules, which do not specify the statute under which costs are sought, would remain applicable. See id. at 1220-21.

In this case, the plain language of the local rule governs the analysis. The local rule provides, without qualification, that "[a]ll applications for costs must be made within fourteen (14) days after the entry of judgment." Local Civil Rule 54.1 (emphasis added). In this respect, the local rule is similar to the Federal Rule of Appellate Procedure applied in Haselwander and it is distinguishable from the local rule applied in Fruitt. Unlike the local rule in Fruitt, the instant local

rule does not limit its application to applications for costs "pursuant to 28 U.S.C. § 1920." Fruitt, 604 F.3d at 1220. Rather, like the Federal Rule of Appellate Procedure applied in Haselwander, the instant local rule applies to all applications for costs. Local Civil Rule 54.1; cf. Fed. R. App. Proc. 39(d)(1) ("A party who wants costs taxed must – within 14 days after entry of judgment – file . . . [a] bill of costs."). Thus, the instant local rule requires all applications for costs, whether made pursuant to § 1920 or the EAJA, to be made within 14 days of judgment.

In sum, under Local Rule 54.1, defendants' failure to timely file a bill of costs constitutes a waiver of any claim for costs. Accordingly, defendants' motion for bill of costs must be denied, and plaintiff's motion for disallowance of costs must be granted.

## CONCLUSION

Based on the foregoing, the court DENIES defendants' motion for attorney's fees and expenses, DENIES defendants' motion for costs, and GRANTS plaintiff's motion for disallowance of costs.

SO ORDERED, this the 26th day of October, 2015.

LOUISE W. FLANAGAN
United States District Judge

23